NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| William I.B., | : |
| Plaintiff, | : Civil No. 20-17380 (RBK) |
| v. | : **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff William I.B.'s Appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Social Security Disability Insurance benefits. For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED**.

**I.   PROCEDURAL HISTORY[1]**

In July 2017, Plaintiff filed an application seeking Social Security Disability Insurance benefits, alleging an onset of disability on February 10, 2016. (ECF No. 13, "Pl. Br."); (R. at 194–207). The application was denied on September 19, 2017, (R. at 96–100), and denied again upon reconsideration on November 24, 2017, (R. at 105–07). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 109–110). On September 19, 2019, a hearing was held before ALJ Karen Shelton. (R. at 38–71). On November 15, 2019, ALJ Shelton

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14–37). Plaintiff appealed ALJ Shelton's opinion to the Appeals Council on December 26, 2019. (R. at 191–93). The Appeals Council denied Plaintiff's request for review on October 13, 2020, (R. at 1–8), and ALJ Shelton's November 2019 decision became the final decision of the Commissioner of Social Security. On November 30, 2020, Plaintiff appealed the matter to this Court. (ECF No. 1).

## II.   LEGAL STANDARD

### A. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity

("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the ALJ's factual findings under a "substantial evidence" standard. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); and *Monsour Med. CR. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

This Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not consider the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J.

1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114).

### III.   FACTUAL BACKGROUND

Plaintiff William I.B. was born in November 1976. (R. at 194). He completed high school and attended a technical college. (R. at 47–49); (ECF No. 13, Pl. Br. 3). Plaintiff previously worked as a landscaper, laborer, and physical respiratory therapist. (R. at 27, 49–51).

In 2016, Plaintiff sustained an injury to his back in a workplace accident. (R. at 213). As a result, he underwent two back surgeries. (R. at 213, 341). Plaintiff stopped working after the 2016 accident. (R. at 213, 341).

#### A. The ALJ's Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date, February 10, 2016, through his date last insured, September 20, 2018. (R. at 22). At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, status post L5-S1 microdisectomy and subsequent L5-S1 right facetectomy/discectomy with L5-S1 transformainal lumbar interbody fusion. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23).

The ALJ then constructed Plaintiff's residual functional capacity ("RFC"), finding that, during the relevant period:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can only lift/carry no more than 10 pounds frequently or occasionally; can stand/walk 2 of 8 hours and sit for 6 of 8 hours; needs the opportunity to stand for 5 minutes after ½ hour of sitting and sit

>  for 5 minutes after ½ hour of standing or walking; needs a cane for ambulation; can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; and can frequently stoop and occasionally kneel, crouch or crawl.

(R. at 24).

At Step Four, the ALJ concluded that, based on his RFC, Plaintiff was unable to return to his past relevant work. (R. at 27). At Step Five, based on the above analysis and the testimony of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on his age, RFC, education, and work experience, such as a final assembler, lens inserter, and compact assembler. (R. at 28–29). Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between his alleged disability onset date and his date last insured. (R. at 29).

## IV.   DISCUSSION

At the fifth step of the sequential evaluation process, the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The other work must be available "in significant numbers in the national economy." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520(f)); SSR 96-8P. Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to perform other work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot perform other work, then the ALJ must find that the claimant is disabled. *Id.*

Plaintiff raises two challenges on appeal, both relating to the ALJ's analysis at Step Five. *See* (Pl. Br. 6–15). Plaintiff contends that the ALJ erred at Step Five by: (1) failing to properly consider the Vocational Expert's ("VE") testimony on cross-examination; and (2) failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") in violation of SSR 00-4p. (*Id.*) We begin with Plaintiff's first challenge.

### A. VE's Testimony on Cross-Examination

On direct examination by the ALJ, the VE identified three occupations that a person with roughly Plaintiff's RFC could perform. (R. at 64–65). In the instant appeal, Plaintiff claims that the ALJ failed to address the VE's testimony on cross-examination that the three proffered occupations are performed while sitting, not standing. (Pl. Br. 8). This is a critical failure, Plaintiff contends, because Plaintiff's RFC specifies that he must be permitted to stand for 5 minutes after 30 minutes of sitting (a "sit/stand option"). (*Id.* at 9). As a result, Plaintiff continues, he would necessarily be off task at least 14% of the workday. (*Id.*) And because the VE also testified that an employee who is off task for more than 10% of the workday would be precluded from fulltime work, Plaintiff argues that the ALJ erred in concluding that Plaintiff is able work in these occupations given his RFC. (*Id.*) (citing R. at 65). Defendant responds that "Plaintiff's argument is speculative and simply presupposes this duration of off-task time." (ECF No. 14, Def. Opp'n Mem. 9) (citing *Garavaglia v. Colvin*. No. 114CV02464, 2015 WL 8935153, at *5–7 (M.D. Pa. Nov. 9, 2015), report and recommendation adopted, No. 1:14-CV-2464, 2015 WL 8781342 (M.D. Pa. Dec. 15, 2015)).

The Commissioner bears the burden of proof at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). The ALJ must rely on the testimony of a VE or a learned treatise to meet the burden of establishing that jobs exist in the national economy that a claimant can

perform. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). It is well-established that the ALJ has an obligation to develop the record during an adjudicative hearing. *Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005). ALJs are not entitled to consider the possibility of "reasonable accommodations" for claimants when determining the availability of jobs that the claimant might be able to perform. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999)).

When examined by the ALJ, the VE testified that a person with roughly Plaintiff's RFC—though with no sit/stand option—would be able to work as a final assembler of optical goods, lens inserter, and compact assembler. (R. at 64–65). The ALJ then asked:

> Q: If the same individual were going to be off task more than 10% of the day…
> A: No work, Your Honor.
> …
> Q: Okay. What if that same individual, from the last hypothetical, needed the opportunity to stand for five minutes, after a half hour of sitting, or to sit for five minutes after a half hour or [*sic*] standing or walking. Would that eliminate the jobs you identified as sedentary?
> A: No.
> Q: And if the individual needed a cane for ambulation, would that eliminate the jobs you identified as sedentary?
> A: No, Your Honor.
> Q: So the thing that would preclude the sedentary work would be the off task, if they couldn't remain on task for a full eight-hour day, five days a week. Correct?
> A: Correct.

(R. at 65). Read together, this testimony implies that a claimant with Plaintiff's RFC could remain on task at the proffered jobs *while standing* because, if not, the claimant would be off task an impermissible amount. Notably, the VE never explicitly addressed how, if at all, a sit/stand option would impact Plaintiff's ability to stay on task in these jobs. *See* (*id.*)

On cross-examination by Plaintiff's attorney, the VE clarified that a person with Plaintiff's RFC would need to be on task while exercising the sit/stand option:

7

> Q: So with regard to [the ALJ's] hypotheticals, if the individual, when they stand, has to lean on something, and put their hands on something, in order to maintain a standing position, either one, would they be able to perform these jobs?
> A: Well, if they wanted to sit/stand, or stand/sit, 5/30 [minutes], they'd be standing for ten minutes, not working, the way you're proposing your hypothetical. So they would be off task more than 10%.
> Q: So – okay. And if the individual needed a cane, in order to balance, would that have any impact on any of these jobs?
> A: No. Because the jobs are performed sitting. You don't have to use a cane to maintain your balance while you're sitting.

(R. at 66–67).

We find that the VE's response on cross-examination that the relevant occupations "are performed sitting[,]" (R. at 67), calls into question the VE's testimony on direct that a sit/stand option would not preclude work in these jobs, *see* (R. at 65, 68). It is unclear to the Court how a claimant could remain on task while alternating between sitting and standing if "the jobs are performed sitting." (R. at 67). And though the VE does not explicitly state that the jobs *cannot* be performed while standing, that is the clear implication of his answer. Moreover, it appears from the DOT descriptions that the proffered jobs are performed while sitting, not standing.[2] Indeed, the VE testified on cross-examination that a person employed in the identified occupations "work[s] on a desk or a bench." (R. at 70).

Further, we do not agree with Defendant's contention that the VE later "clarified that the individual at issue would remain capable of remaining on task" while standing. (Def. Opp'n Mem. 9–10). The relevant exchange proceeded as follows:

> Q: Okay. So then we're really just talking about an individual --

---

[2] Pursuant to the DOT, a lens inserter: "[f]its lenses into plastic sunglass frames and places frames on conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses." 713.687-026 Lens Inserter, DICOT 713.687-026. The DOT provides that a compact assembler: "[j]oins upper and lower halves of vanity compacts: Inserts pins in hinges to join halves, using fingers or tweezers. Attaches spring catch lock by pressing it into place with pinching tool. Fits mirror on inside of cover." 739.687-066 Compact Assembler, DICOT 739.687-066. Finally, a final assembler: "[a]ttaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdriver. 713.687-018 Final Assembler, DICOT 713.687-018.

> A: Correct.
> Q: -- who would be standing for half an hour, and then the requirement would be that they had to be on task during that time.
> A: Correct.

(R. at 68). We do not consider VE's response here to be evidence that the proffered jobs can be performed while standing. Instead, this testimony indicates only that a person would be required to be on task while standing. This requirement, as Plaintiff notes, is in tension with the VE's claim that these jobs "are performed sitting." (R. at 67); (ECF No. 15, Pl. Reply 5). More confusingly still, the VE testified later in this same exchange that "[i]f the person was performing this job standing, it would become light work." (R. at 69).

In short, the impact of the sit/stand option on Plaintiff's ability to remain on task is unclear from the VE's testimony. The lack of clarity on this point is harmful given that, per the VE's testimony, an inability to stay on task while exercising the sit/stand option would preclude a person with Plaintiff's RFC from working in the identified jobs. (R. at 65–67).

This error might have been harmless had the ALJ made an independent finding that Plaintiff could stay on task while exercising the sit/stand option and explained her basis for such a finding. *Cf. Allen v. Comm'r of Soc. Sec.*, 475 F. Supp. 3d 413, 420 (M.D. Pa. 2020) ("It is well-settled in this circuit that the ALJ must mention or refute any probative evidence so as to allow for meaningful judicial review. This principle is particularly important here, where the Commissioner bears the burden of establishing other work in the national economy which the claimant can perform." (internal citation omitted)). However, the ALJ did not do so. As the sole basis for the ALJ's Step Five determination is the VE's unclear testimony, (R. at 28–29), we cannot say that the ALJ's conclusion that Plaintiff can perform other jobs in the national economy was supported by substantial evidence, *see Zerby v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1405, 2014 WL 3956778, at *6 (N.D. Ohio Aug. 13, 2014) (unpublished) ("[S]ubstantial

evidence does not support an ALJ's decision to deny disability benefits where the VE's testimony is unclear."). As such, remand is appropriate.

### B. SSR 00-4p

Next, Plaintiff contends that the ALJ violated Social Security Regulation 00-4p, 2000 WL 1898704, in two ways. First, Plaintiff claims "[t]he ALJ did not ask the vocational expert whether his response to questions about the alternation of positions and the need for a cane were consistent with the DOT." (Pl. Br. 12). Second, Plaintiff argues the ALJ failed to obtain a "reasonable explanation" for the "apparent conflict between the vocational expert's testimony and the DOT with respect to the parameter of changing the sitting and standing positions on that basis. The DOT provides that 'sedentary' work requires sitting for two hours at a time, not thirty minutes." (Pl. Br. 12–13).

> SSR 00–4p provides, in pertinent part:
>
> When there is an apparent unresolved conflict between VE or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Pursuant to SSR 00-4p, "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citation omitted).

The ALJ did not ask the VE whether the sit/stand option outlined in the ALJ's hypothetical was consistent with the DOT.[3] *See* (R. at 64–66). This failure may constitute remandable error in some cases. However, any error here was harmless, as there is no conflict

---

[3] The ALJ did ask the VE earlier in his testimony whether the ALJ's initial hypothetical, which did not include the sit/stand option, was consistent with the DOT. (R. at 64–65).

10

between the DOT and the VE's testimony regarding the sit/stand option. *See Rivera-Negron v. Astrue*, No. 12-3837, 2013 WL 5823713, at *4 (E.D. Pa. Oct. 30, 2013) ("Obviously, if there was no conflict, the failure to ask the VE about consistency with the DOT would be harmless error.").

It is well established in this circuit that "[w]here the DOT is silent on an issue, … a conflict does not exist." *Kowal v. Saul*, No. 18-1350, 2020 WL 490962, at *3 (W.D. Pa. Jan. 30, 2020) (collecting cases). "The DOT … does not include sit/stand options in job descriptions." *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (citing *Conn v. Astrue*, 852 F. Supp. 2d 517, 523 (D. Del. 2012)). Thus, multiple courts, including the Third Circuit Court of Appeals, have concluded that DOT's silence on sit/stand options does not conflict with a VE's testimony that a claimant can perform certain jobs.[4] *See, e.g.*, *Sanborn*, 613 F. App'x at 177 (finding no conflict between the DOT and the VE's testimony because the DOT is silent on sit/stand options); *Debevits v. Saul*, No. 20-600, 2021 WL 2590140, at *3 (W.D. Pa. June 24, 2021) ("Where the DOT is silent on an issue, however, a conflict does not exist. The DOT does not include sit / stand options in job descriptions. Consequently, no conflict exists."); *Phillips v. Berryhill*, No. 15-5204, 2017 WL 2224931, at *7 (E.D. Pa. May 22, 2017) ("The Third Circuit Court of Appeals has recognized that the DOT's silence with regard to the sit/stand option does not place it in conflict with jobs identified by a VE.").

Because the DOT is silent on sit/stand options, there is no conflict between the DOT and the VE's testimony that a person with Plaintiff's RFC—including the sit/stand option—could work as a final assembler, lens inserter, or compact assembler. (R. at 65). As such, the ALJ did not need to obtain a "reasonable explanation" per SSR 00-4p.

---

[4] To the extent that this Court's analysis in *Padgett v. Commissioner of Social Security*, No. CIV 09-3731 (RBK), 2010 WL 3081440, at *16 (D.N.J. Aug. 3, 2010), can be read to suggest that there is a conflict between the DOT and a VE's testimony based on the absence of sit/stand options in the DOT's job descriptions, we recognize that the vast majority of post-*Padgett* cases have found that no such conflict exists.

11

We are not persuaded by Plaintiff's argument that VE's testimony conflicts with the DOT's definition of sedentary work. *See* (Pl. Br. 13). The regulations Plaintiff cites to support his claim, SSR 83-12, 1983 WL 31253, and SSR 96-9p, 1996 WL 374185, explicitly contemplate a claimant's need for alternative sitting/standing arrangements. The fact that a "full range" of sedentary work generally involves sitting for prolonged periods of time does not necessarily create a conflict here. Therefore, remand is not required on this issue.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for benefits is **VACATED** and **REMANDED** for further proceedings consistent with this Opinion. An Order follows.

Dated: 02/24/2022                                          /s/Robert B. Kugler
                                                                      ROBERT B. KUGLER
                                                                      United States District Judge